Clara P. Cary
vs.　　　　Div. No. 16036.
Edwin F. Cary

November 21, 1934.

WALSH, J. Heard on petition of respondent, Edwin F. Cary, for modification of a final decree entered herein on April 1, 1924.

Under decree of April 1, 1924, Mr. Cary was obligated to pay alimony to Clara P. Cary at the rate of $350 per month. Owing to alleged change in circumstances, Mr. Cary now seeks to have this sum materially reduced. There is no question that the financial condition of Mr. Cary has changed for the worse during the interval from April 1, 1924 to date. His former wife has realized this apparently be-

cause she has consented to a substantial reduction in monthly payments from September 1, 1933 to October 1, 1934. .  .

A husband's obligation to support a former wife ranks equally in importance with the obligation to support a second wife and the duty to maintain himself. It becomes vital, therefore, to ascertain Mr. Cary's present standard of living and his present financial condition. Mr. Cary lives on his farm in Smithfield for about six months and in a furnished flat in Providence for the remainder of the year. He owns the farm, subject to a mortgage of $8,000, and the rent of the furnished flat last winter was $75 per month. His average garage bill for the winter months is $18 per month. Wages for a maid, $12 per week, are now paid by the present Mrs. Cary. His household expenses for eight months (from Jan. 4, 1934, to September 7, 1934) amounted to $1,025 or, roughly, $125 per month. Without including miscellaneous items, such as entertainment, clubs, meals down-town, clothing, etc., on Mr. Cary's own figures we find he is paying about $218 per month in fixed charges for his household expenses. Mr. Cary intends to live at the same ratio in the future and to pay for the same out of his own funds.

In his office, Mr. Cary employs Mr. Drew at a salary of $200 per month and a stenographer and bookkeeper at a salary of $20 per week. If business is as bad as Mr. Cary says it is, it might be advisable to discontinue Mr. Drew's salary and put him on a commission basis and also procure a cheaper bookkeeper until business picks up. It might be advisable for the time being, also, for Mr. Cary to take over the management of the Bordeaux Apartments (now handled by Mr. Drew) and add the salary therefrom of $100 per month to his income. If Mr. Cary would devote a little more attention to "bills receivable" in his

office, he might increase his income. From income tax returns and figures from his office, we are inclined to the belief that Mr. Cary's office business is still showing a profit.

As to Mr. Cary's other investments, we feel that he will not realize anything from the Bordeaux Apartments for some time, if at all. The receipts of this piece of property at the present time are not sufficient to cover the carrying charges of taxes, interest and insurance. The same reasoning applies to the Governor and East Manning Street property unless the vacant tenement is rented in the near future. The Smithfield farm, being occupied by Mr. Cary, has no available income. On the other side of the picture, however, we have the Pearl Street garages. The mortgage of $15,000 on this property, payable to the Morse Estate, of which Mr. Cary is trustee, was placed under peculiar circumstances. We are satisfied that Mr. Cary has a substantial equity in this property upon which he may be able to realize in the future. At present we feel that the income from this property is more than sufficient to cover its carrying charges.

The burden is upon Mr. Cary to show us by a fair preponderance of the evidence that his circumstances have so changed that it is inequitable to require him to comply with the order of the Court. We think he has shown us that it is inequitable to require him to pay $350 per month in his present circumstances, but we do not think that he has shown us that he should be relieved of his obligation to support his former wife to any extent whatsoever. With the practice of economy in his office and at his home, we feel that $142.50 per month, the figure arrived at by agreement between the parties for the period from September 1, 1933 to October 1, 1934, is a fair and reasonable sum for him to pay as alimony to his former wife.

This decision is made, however, upon the express understanding that it is without prejudice to the former Mrs. Cary to apply for a modification of this order in the event that Mr. Cary's financial condition improves.

The attorneys for Mrs. Cary ask us to allow them counsel fees for their services in the present case and also for prosecuting a petition to adjudge Mr. Cary in contempt. This hearing has taken a number of days and has involved intensive study and search of Mr. Cary's records. We feel that we cannot compensate counsel adequately due to Mr. Cary's present financial condition. We do feel, however, that Mr. Cary should pay to Edwards & Angell, counsel for Mrs. Cary, on or before March 1, 1935 the sum of Two Hundred Dollars as counsel fees.

For petitioner: Edwards & Angell, William H. Edwards.

For respondent: Comstock & Canning, Edward Brennan.